## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**MARIO A. FUNES**                          **CIVIL ACTION**

**VERSUS**                                  **NO.  15-2108**

**BURL CAIN, WARDEN**                       **SECTION "R"(2)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Mario A. Funes, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On February 26, 2009, Funes and four co-defendants, Jose

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2]Rec. Doc. No. 1.

Cornejo-Garcia, Renil D. Escobar-Rivera, Rigoberto Funes, and Pedro A. Navarrete-Duran, were indicted by a Jefferson Parish grand jury on four counts of second degree murder for the deaths of Wallace Gomez, Beauford Gomez, Wayne Hebert and Jeffrey Carmadelle.[3]  The second count for the murder of Beauford Gomez was later quashed as to Funes.[4] The Louisiana Fifth Circuit Court of Appeal summarized the facts determined at trial as follows:

> On Thursday, October 30, 2008, at approximately 2:00 p.m., five Hispanic males, later identified as defendant and his co-defendants, entered Gomez's Bar in Marrero, Louisiana, with the intent to rob the bar, which was known to have large amount (sic) of cash on hand.  A gunfight ensued, during which four victims were killed and defendant was injured.  The robbers were apprehended a short time later as they tried to leave the scene.

State v. Funes, 87 So.3d 134, 134 (La. App. 5th Cir. 2012) (footnote omitted); State Record Volume 7 of 10, Louisiana Fifth Circuit Opinion, 11-KA-595, p. 2, January 24, 2012.

After the proceedings were severed as to each defendant, Funes was tried before a jury on September 21 through 23, 2010, and found guilty as charged by unanimous verdict on the remaining three counts of second degree murder.[5]  At a hearing on

---

[3]St. Rec. Vol. 2 of 10, Indictment, 2/26/09; Grand Jury Return, 2/26/09.

[4]St. Rec. Vol. 2 of 10, Hearing Minutes, 3/22/10; Motion to Quash, 3/22/10.

[5]St. Rec. Vol. 2 of 10, Trial Minutes, 9/21/10; Trial Minutes, 9/22/10; Trial Minutes, 9/23/10; Minute Entry, 2/11/10; Motion to Sever, 1/12/10; St. Rec. Vol. 5 of 10, Trial Transcript, 9/21/10; St. Rec. Vol. 6 of 10, Trial Transcript (continued), 9/21/10; Trial Transcript, 9/22/10; St. Rec. Vol. 7 of 10, Trial Transcript (continued), 9/22/10; Trial Transcript, 9/23/10.

September 30, 2010, the state trial court denied Funes's motion for a new trial asserting insufficient evidence.[6]  After waiver of legal delays, the court sentenced Funes at the same hearing to consecutive sentences of life in prison without benefit of parole, probation, or suspension of sentence on each of the three counts.[7]

On direct appeal to the Louisiana Fifth Circuit, Funes's appointed counsel argued that the state trial court erred in denying the defense motion to quash the indictment based on the theory that La. Code Crim. P. art. 782(A) is unconstitutional in allowing a non-unanimous verdict to convict.[8]  The court affirmed the conviction on January 24, 2012, finding that Funes had no standing to challenge the statute because he was convicted by unanimous verdict, and alternatively, that the claim had no legal merit.[9]

Funes's conviction became final thirty (30) days later, on February 23, 2012, when he did not seek rehearing or file timely for review in the Louisiana Supreme Court. Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

---

[6]St. Rec. Vol. 1 of 10, Sentencing Minutes, 9/30/10; Motion for New Trial, 9/30/10; St. Rec. Vol. 7 of 10, Sentencing Transcript, p. 5, 11/12/99.

[7]St. Rec. Vol. 1 of 10, Sentencing Minutes, 9/30/10; St. Rec. Vol. 7 of 10, Sentencing Transcript, pp. 5, 16,  11/12/99.

[8]St. Rec. Vol. 7 of 10, Appeal Brief, 11-KA-595, 8/8/11.

[9]Funes, 87 So.3d at 135-36; St. Rec. Vol. 7 of 10, 5th Cir. Opinion, 11-KA-595, p. 2, 1/24/12.

Funes later filed an untimely[10] writ application in the Louisiana Supreme Court, which the court denied on September 14, 2012.[11] The United States Supreme Court also denied Funes's later petition for writ of certiorari on February 25, 2013.[12]

Six months later, on August 28, 2013, Funes signed and submitted an application for post-conviction relief to the state trial court in which he asserted the following grounds for relief:[13] (1) He was denied effective assistance of counsel when his counsel (a) filed a frivolous motion to quash his indictment, challenging the constitutionality of La. Code Crim. P. art. 782(A) knowing it would not be successful; (b) failed to have all pretrial motions resolved, specifically the motion for preliminary examination and for a bill of particulars; (c) presented a meaningless defense when he argued to the jury that the robbery was over and the felony murder doctrine did not apply; (d) failed to object to the indictment not being presented in open court; (e) failed to object to the trial court's removal of Funes from the courtroom during a critical point in trial; and (f) failed to file a motion to reconsider Funes's sentence. (2) He was denied effective assistance of counsel on direct appeal when his counsel (a) failed to assert a claim of ineffective

---

[10]La. S. Ct. Rule X §5 allows thirty (30) days to file for review in the Louisiana Supreme Court. Funes's dated his signature on the writ application on March 9, 2012, fourteen days after the thirty-day period expired on February 23, 2012.

[11]State ex rel. Funes v. State, 97 F.3d 1014 (La. 2012); St. Rec. Vol. 8 of 10, La. S. Ct. Order, 2012-KH-0611, 9/14/12; La. S. Ct. Writ Application, 12-KH-611, 3/14/12 (dated 3/9/12).

[12]Funes v. Louisiana, __ U.S. __, 133 S. Ct. 1463 (2013).

[13]St. Rec. Vol. 1 of 10, Application for Post-Conviction Relief, 9/6/13 (dated 8/28/13).

assistance of trial counsel, (b) failed to assert error in the trial court's denial of the motion for new trial, and (c) failed to file a meaningful brief on appeal. (3) He was denied a fair trial when the state trial court (a) denied the motion for new trial, (b) removed Funes from the courtroom during trial, (c) removed a juror after the juror was accepted and sworn, (d) lacked jurisdiction over the case because the indictment was not returned in open court, and (e) imposed consecutive life sentences.

On January 17, 2014, after receiving a response from the State, the state trial court denied relief, finding no merit in the claims and that his claim alleging improper imposition of consecutive life sentences was not procedurally proper for review on post-conviction under La. Code Crim. P. art. 930.3, State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996), and State v. Hebreard, 708 So.2d 1291 (La. App. 4th Cir. 1998).[14]

On appeal, Funes limited his argument before the Louisiana Fifth Circuit to five points:[15] (1) He was denied effective assistance of trial counsel when his counsel filed a frivolous motion to quash the indictment, challenging the constitutionality of La. Code Crim. P. art. 782(A) knowing it would not be successful. (2) He was denied effective assistance of trial counsel when his counsel presented a meaningless defense by arguing to the jury that the robbery was over and the felony murder doctrine did not apply. (3)

---

[14]St. Rec. Vol. 1 of 10, Trial Court Order, 1/17/14; State's Response, 11/13/13; Trial Court Order, 10/10/13.

[15]St. Rec. Vol. 9 of 10, 5th Cir. Writ Application, 14-KH-309, p. 2, 4/25/14 (4/16/14); St. Rec. Vol. 1 of 10, Trial Court Order, 4/2/14; Motion to Set Return Date, 2/19/14.

He was denied effective assistance of trial counsel when his counsel failed to object to the trial court's removal of Funes from the courtroom during a critical point in trial. (4) He was denied effective assistance of counsel on direct appeal when his counsel failed to file a meaningful brief. (5) He was denied a fair trial when the state trial court removed a juror after the juror was accepted and sworn.

The appellate court denied Funes's writ application on May 23, 2014, affirming the state trial court's denial of relief and finding that these five claims were meritless.[16] The Louisiana Supreme Court also denied Funes's related writ application without stated reasons on April 24, 2015.[17]

## II.   FEDERAL HABEAS PETITION

On June 12, 2015, the clerk of this court filed Funes's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[18] (1) He was denied effective assistance of trial counsel when his counsel filed a frivolous motion to quash the indictment, challenging the constitutionality of La. Code Crim. P. art. 782(A) knowing it would not be successful. (2) He was denied effective assistance of trial counsel when his counsel presented a meaningless defense by arguing to the jury that the

---

[16]St. Rec. Vol. 9 of 10, 5th Cir. Order, 14-KH-309, 5/23/14.

[17]State ex rel. Funes v. State, 168 So.3d 408 (La. Apr. 24, 2015); St. Rec. Vol. 10 of 10, La. S. Ct. Order, 2014-KH-1375, 4/24/15; La. S. Ct. Writ Application, 14-KH-1375, 6/30/14 (signed and dated 6/23/14).

[18]Rec. Doc. No. 1.

robbery was over and the felony murder doctrine did not apply. (3) He was denied

effective assistance of trial counsel when his counsel failed to object to the trial court's

removal of Funes from the courtroom during a critical point in trial. (4) He was denied

effective assistance of counsel on direct appeal when his counsel failed to file a

meaningful brief. (5) He was denied a fair trial when the state trial court removed a juror

after the juror was accepted and sworn.

The State filed a response in opposition to Funes's petition in which it conceded

and waived the defenses of timeliness, exhaustion and procedural default.[19] In addition,

---

[19]Rec. Doc. No. 6 at pp. 1 and 10. Oddly, the State waived the time bar defense, despite the fact that Funes's federal petition was not timely filed under the AEDPA standards. His federal petition should have been filed within one year following finality of his state court criminal conviction. 28 U.S.C. § 2244(d)(1); Duncan v. Walker, 533 U.S. 167, 179-80 (2001). His conviction was final on February 23, 2012, when he did not seek timely review of his direct appeal. Pursuant to La. S. Ct. Rule X §5, he had thirty (30) days after the Louisiana Fifth Circuit affirmed his conviction on January 24, 2012, or until February 23, 2012, to file a timely writ application with the Louisiana Supreme Court. He did not sign and submit his writ application to that court until March 9, 2012, which was outside the allowable time period under state law. Under federal law, this untimely writ application under La. S. Ct. R. X §5 cannot be considered in the finality or limitations calculation. See Butler, 533 F.3d at 317, 319 (La. S. Ct. R. X§5(a) forbids any extension of time); Williams v. Cain, 217 F.3d 303, 309-11 (5th Cir. 2000) (same).

Funes had no properly filed state post-conviction or other collateral review proceedings pending in the state courts between February 23, 2012, when his conviction was final, and February 22, 2013, when the one-year AEDPA statute of limitations expired. He did not sign and submit his state application for post-conviction relief until August 28, 2013, six months after the AEDPA deadline expired. This late pleading after the AEDPA filing period had already expired did not toll or otherwise revive it. Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000). The petition for writ of certiorari to the United States Supreme Court, filed after finality of his conviction, did not toll the AEDPA statute of limitations under Section 2244(d)(2). Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) ("a petition for writ of certiorari to the Supreme Court is not an application for 'State' review that would toll the limitations period."), cert. denied, 529 U.S. 1099 (2000).

The AEDPA statute of limitations is an affirmative defense, rather than a jurisdictional mandate. Davis v. Johnson, 158 F.3d 806, 810 (5th Cir.1998), cert. denied, 526 U.S. 1074 (1999). Consequently, the limitations defense may be waived by the State, and the waiver must be express and intentional. Scott, 227 F.3d at 263 (citing Smith v. Johnson, 216 F.3d 521 (5th Cir. 2000)), cert. denied, 532 U.S. 963 (2001); Magouirk v. Phillips, 144 F.3d 348 (5th Cir. 1998). Here, despite the expiration of the AEDPA

the State argues that denial of relief by the state courts as to these claims was neither contrary to, nor an unreasonable application of, Supreme Court law.

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[20] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Funes's petition, which, for reasons discussed below, is deemed filed in a federal court on June 12, 2015.[21]

---

filing period and without any discussion, the State declared Funes's petition timely filed (Rec. Doc. No. 6, p.1) and "waives any objection based on the untimeliness of Funes's petition." (Rec. Doc. No. 6, p.10). The State's waiver was express and intentional, and the court is bound by its waiver. Day v. McDonough, 547 U.S. 198, 202 & 210 n.11 (2006) ("And we would count it an abuse of discretion to override a State's deliberate waiver of a limitations defense"); Wood v. Milyard, __ U.S. __, 132 S. Ct. 1826, 1834-35 (2012) (appellate court abused its discretion by sua sponte raising limitations on appeal after the State recognized a viable limitations defense and deliberately declined to pursue it).

[20]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The official stamp from the prison's Legal Programs Department reflects that Funes delivered the petition and accompanying documents to prison officials on June 12, 2015, the same day the documents were emailed to the clerk

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated above, the State concedes timeliness and waives the limitations defense.  Although the record shows, as explained in footnote 19 above, that Funes's federal petition is not timely filed under the AEDPA, the State's express waiver precludes further discussion of the issue.  The State also concedes and I find that state court review of his claims was exhausted and none of the claims are in procedural default.

IV.   STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the

_____

of court for filing. Rec. Doc. No. 2, p.1.

State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Hill, 210 F.3d at 485. The "critical point" in determining the

Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011), and Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

V.      ANALYSIS

A.      ASSISTANCE OF COUNSEL (CLAIMS NOS. 1-4)

Funes argues that he was denied effective assistance of counsel at trial when his

counsel filed a frivolous motion to quash, presented a meaningless defense and failed to

object to the trial court's removal of Funes from the courtroom.  He also claims that he

was denied effective assistance of counsel on direct appeal when his counsel failed to file

a meaningful brief.  Funes initially asserted these arguments in his post-conviction

application in the state trial court.  Relying on the standards set forth in Strickland v.

Washington, 466 U.S. 668 (1984) and its progeny, the state trial court denied relief,

finding that Funes failed to establish that his trial and appellate counsel acted deficiently

or prejudicially.

The Louisiana Fifth Circuit subsequently reiterated the trial court's assessment of

the record and facts and found no basis for relief under Strickland.  This was the last

reasoned opinion on the claims.  See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991)

(when the last state court judgment does not indicate whether it is based on procedural

default or the merits of a federal claim, the federal court will presume that the state court

has relied upon the same grounds as the last reasoned state court opinion).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under

13

Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105. The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen v. Pinholster, 563 U.S. 170, __, 131 S. Ct. 1388, 1403 (2011) (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption" that

counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

1.    TRIAL COUNSEL

Funes argues that his trial counsel unreasonably filed a frivolous motion to quash the indictment based on the unconstitutionality of non-unanimous verdict under La. Code Crim. P. art. 782(A), knowing that the motion was legally unfounded. The state trial court denied relief on this issue on post-conviction review because Funes did not

establish that counsel's action in this regard was deficient or caused him prejudice under Strickland.

The record indicates that this motion to quash was actually filed by counsel for a co-defendant, Rigoberto Funes, and was adopted by Funes's counsel and counsel for the other co-defendants at a hearing on March 22, 2010.  The state trial court denied the motion based on prior holdings of the United States Supreme Court and the Louisiana Supreme Court authorizing non-unanimous verdicts.[22]

The fact that the motion was unsuccessful does not equate to deficient or unreasonable performance by counsel.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689 (citations omitted).  In this case, asserting the motion was within counsel's discretion and certainly did not prejudice the defense or impact the outcome of the proceedings.

Funes also claims that counsel presented a meaningless defense when he argued to the jury that the robbery was over and the felony murder doctrine did not apply.  The

---

[22]Funes, 87 So.3d at 135 (citing Apodaca v. Oregon, 406 U.S. 404 (1972), McDonald v. City of Chicago, 561 U.S. 742, 765 n.14 (2010), State v. Belgard, 410 So.2d 720, 726 (La. 1982)); St. Rec. Vol. 2 of 10, Hearing Minutes, 3/22/10; St. Rec. Vol. 5 of 10, Hearing Transcript, pp. 10, 15, 3/22/10.

record indicates that the State's theory was that the murders occurred during the commission of an armed robbery at Gomez's Bar and therefore constituted second degree murder.[23]  The State also argued that Funes remained in the bar after the other perpetrators ran, so that he could steal the last of the cash from the register behind the bar.  The State argued that this proved Funes's level of intent, that the robbery was a continuing act, and that the robbery was specifically prolonged by Funes himself.

At trial, defense counsel attempted to refute this argument by asserting that Funes was leaving the scene (the actual robbery had stopped) when one of the bar owners, Wallace Gomez, shot at Funes twice, and Funes returned fire, killing Gomez.[24]  The evidence also showed that, in this exchange, a bullet fired by Wallace Gomez also killed Wallace's brother, Beauford Gomez.  Immediately afterwards, two of the other perpetrators returned to the bar to retrieve Funes and more shots were fired, killing two other patrons in the bar.

In his closing arguments, Funes's counsel used this chronology of events in an effort to remove the felony element and at least downgrade the crime from second degree murder to manslaughter, a responsive verdict available to the jury.  In doing so, counsel reiterated that four of the perpetrators had already left the bar and Funes was leaving

---

[23]See, e.g., St. Rec. Vol. 7 of 10, Trial Transcript, pp. 43-48 (State's Closing Argument), 9/23/10.

[24]For a more detailed summary of the facts surrounding the armed robbery and quadruple murder, see State v. Rigoberto Funes, 88 So.3d 490 (La. App. 5th Cir. 2011).

when the shooting started, so that the robbery was essentially over.  He also pointed to witness testimony tending to show that Funes was leaving the bar when Wallace Gomez shot at him.[25]  Counsel also argued that the State failed actually to present any consistent and tangible evidence that Funes was the shooter or that he actually robbed the bar that day, since he had no gunpowder residue on him and statements about the gun he allegedly possessed were inconsistent.

Attempting to create doubt in the minds of the jurors, counsel argued that Funes was trying to leave the bar when the matter was escalated by Wallace Gomez.  Given the evidence, it was reasonable, sound strategy for defense counsel to focus on Funes's attempt to leave the bar before anyone was shot.  Under the doubly deferential standards of Strickland and the AEDPA, Funes has not shown that counsel acted deficiently or prejudicially in offering reasons for the jury to doubt both Funes's intent to kill and his role in the robbery.

Funes also argues that his counsel erred when he failed to object to his removal from the courtroom during a critical point in trial.  The state courts found this argument factually incorrect, noting that Funes only left the courtroom for a few seconds to take medication sent to him from the prison and had returned to the courtroom when questioning resumed.  As found by the state courts, the record reflects that Funes stepped

---

[25]St. Rec. Vol. 7 of 10, Trial Transcript, p. 54 (Defense's Closing Argument), 9/23/10.

out the door of the courtroom for just a few seconds to take medication brought to him from the prison.  This was the only instance appearing in the record when Funes had cause to leave the courtroom during trial (other than ordered breaks).  The record specifically shows that during the defense cross-examination of Stanley Gomez on September 22, 2010, the trial judge called counsel to the bench to advise him that a nurse had brought anti-seizure medication from the prison for Funes to take for symptoms related to his gunshot wound, indicating that "they're telling me that he's got to take it now."[26]  The court directed that Funes be allowed to step out of the door to take his medication while counsel gathered an exhibit.[27]  The state trial judge, who was in the best position to make such a determination, indicated that this took a matter of seconds, just long enough for Funes to swallow the pill.[28]

The record does not support Funes's suggestion that he was removed from the courtroom for hours during a crucial point in the trial.  Counsel had no reason to object to something that did not happen or to the trial court permitting Funes a few seconds to take his medication, all of which was completed before counsel asked the next question of the witness on the stand.  See Clark v. Thaler, 673 F.3d at 429 ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance"); Wood v.

---

[26]St. Rec. Vol. 6 of 10, Trial Transcript, pp. 86-87, 9/22/10.

[27]Id., p. 87.

[28]Id.; see also, St. Rec. Vol. 1 of 10, Trial Court Order, 1/17/14.

Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)); Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

For the foregoing reasons, Funes has failed to demonstrate that his counsel acted deficiently or prejudicially.  The state courts' denial of relief on these issues was not contrary to or an unreasonable application of Strickland and its progeny.

2.    APPELLATE COUNSEL

Funes also argues that his appellate counsel was ineffective when he failed to file a meaningful brief.  He specifically argues that counsel knew or should have known that the only asserted issue, a challenge to the constitutionality of the non-unanimous verdict under La. Code Crim. P. art. 782(A), would not be successful.  The state courts denied relief on this claim under the Strickland standard because Funes did not identify any other meritorious issues that should have been raised by counsel on appeal.

Persons convicted of crime are entitled to effective assistance of counsel in their first appeal of right.  Evitts v. Lucey, 469 U.S. 387, 394 (1985).  The Strickland standard for judging performance of counsel also applies to claims of ineffective appellate counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Goodwin v. Johnson, 132 F.3d

20

162, 170 (5th Cir. 1997).   To prevail on a claim that <u>appellate</u> counsel was constitutionally ineffective, a petitioner must show that his appellate counsel unreasonably failed to discover and assert a nonfrivolous issue and establish a reasonable probability that he would have prevailed on this issue on appeal but for his counsel's deficient representation.  <u>Briseno v. Cockrell</u>, 274 F.3d 204, 207 (5th Cir. 2001); <u>Smith</u>, 528 U.S. at 285-86.

Effective appellate counsel are not required to assert every nonfrivolous available ground for appeal.  <u>Green</u>, 160 F.3d at 1043 (citing <u>Evitts</u>, 469 U.S. at 394).   On the contrary, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue <u>every</u> nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal.  <u>Jones v. Barnes</u>, 463 U.S. 745, 751-52 (1983).   Appellate counsel has the discretion to exclude even a nonfrivolous issue if that issue was unlikely to prevail.  <u>See Anderson v. Quarterman</u>, 204 F. App'x 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit.   As such, failure to raise these issues did not prejudice Anderson."); <u>Penson v. Ohio</u>, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); <u>Kossie v. Thaler</u>, 423 F. App'x 434, 437 (5th Cir. 2011) (recognizing the

Supreme Court's basic rule that the presumption that appellate counsel was effective will be overcome only when the claims not asserted are stronger than those that were in fact raised).  Thus, because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue.  Smith, 528 U.S. at 288;  Jones, 463 U.S. at 754.

As previously discussed, the fact that the sole issue raised by counsel on appeal was not successful under prevailing law, does not equate to ineffective assistance.  See Strickland, 466 U.S. at 689; Martinez, 99 F. App'x at 543.  As outlined above, the test for the effectiveness of appellate counsel is not success on the issues raised, but whether counsel was unreasonable in failing to assert other obviously meritorious claims.  The state courts' analysis of Funes's arguments complied with this standard of review.

Having reviewed Funes's prior pleadings and the arguments asserted here, I find that this record contains no non-frivolous argument that should have been raised by appellate counsel.  Funes has not identified, indicated or demonstrated any other error that should have been asserted by appellate counsel in addition to, or instead of, the claim presented.  Accordingly, the denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  Funes is not entitled to relief on this claim.

22

B.    REMOVAL OF THE JUROR (CLAIM NO. 5)

Funes argues that the state trial court erred when it removed a juror who had been selected and sworn.  Funes argues that the issue is not whether the trial judge should have allowed a back-strike by defense counsel, but whether the trial court had authority to remove a seated juror under La. Code Crim. P. arts. 788(A) and 796, especially since Funes was ultimately convicted by unanimous verdict.  Funes further argues that the state trial court did not have authority to remove the juror without first finding that the juror was not competent to remain on the jury, in accordance with La. Code Crim. P. art. 796.

The state courts denied relief on this claim, finding it factually flawed; that is, the juror had not been sworn when the court allowed defense counsel to use a back-strike to remove him from the prospective jury.  The state courts found that the actually selected jury was not sworn until <u>after</u> the juror was removed, and that Funes's claim had no merit.

To whatever extent Funes argues that the state trial court violated state law in releasing the juror from the jury selection process, that claim is not cognizable on federal habeas review.  <u>See</u> <u>Swarthout v. Cooke</u>, 526 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law).  A federal habeas court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." <u>Wilkerson v. Whitley</u>, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).  Instead,

federal habeas corpus relief is only properly granted "on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This means that federal courts do not sit to review errors under state law unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. Lisenba v. People of the State of California, 314 U.S. 219, 236-37 (1941); Peters v. Whitley, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right.)

In this case, Funes has not identified any error under state law by the state trial court that rendered his trial fundamentally unfair. The state courts' factual finding that the juror was released before the jury was sworn is fully supported by the record. The voir dire transcript reflects that, after questioning of and exercising a number of peremptory strikes as to a first and second panel of potential jurors, the parties had culled the potential jury members to twelve and had not yet selected an alternate.[29] At that point, defense counsel requested to exercise the back-strike, which the trial court allowed.[30] Thereafter, the parties selected another juror and an alternate juror. The

---

[29] St. Rec. Vol. 5 of 10, Trial Transcript, p. 155, 9/21/10.

[30] Id., pp. 155-56.

selected twelve jurors and one alternate were then recalled to the courtroom, seated together and sworn in by the clerk.[31]

Having failed to establish any error by the state trial court, Funes has failed to establish an act that would have rendered his trial fundamentally unfair. He therefore has not presented a cognizable issue for this court to review. The state courts' denial of relief on this issue was a matter of state law that did not involve federal constitutional law or create a fundamental flaw in the proceedings. Funes is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Funes's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

---

[31]Id., p. 158.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[32]

New Orleans, Louisiana, this ____21st____ day of September, 2015.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[32]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.